# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) ) | |
| v. | ) ) | No. 76232-0-I (consol. with No. 76333-4-I) |
| SAY SULIN KEODARA, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: May 7, 2018 |

DWYER, J. — Say Keodara committed terrible crimes when he was 17 years old. He was sentenced to a low-end standard range sentence of 831 months of incarceration. Finding that this 69-year, three-month sentence was the functional equivalent of a life-without-parole sentence, and that the sentencing court had, at sentencing, treated as immaterial Keodara's youth, we reversed the sentence and remanded the cause for a new sentencing hearing.

On remand, the court considered Keodara's youth at the time of his offense, including the particular circumstances of his upbringing and general circumstances pertaining to youthful offenders. The court concluded that Keodara had proved by a preponderance of the evidence that he should receive an exceptional sentence below the standard range. The court imposed a 480-month sentence. This 40-year sentence is not the equivalent of a life-without-parole sentence.

Because the sentencing court (1) recognized that no mandatory sentence provisions were applicable in Keodara's circumstance, (2) recognized that it had discretion at sentencing to select an appropriate sentence, (3) exercised its discretion, (4) considered Keodara's youth in determining the appropriate sentence, and (5) imposed a sentence below the standard range for a lesser term than life, there was no error. We affirm.

I

In 2013, a jury convicted Keodara for crimes that he committed when he was 17 years old.[1] The crimes of conviction were one count of murder in the first degree, one count of unlawful possession of a firearm in the first degree, and three counts of assault in the first degree. The murder conviction and the three assault convictions included, for sentencing purposes, mandatory firearm enhancements. Keodara was sentenced to a total of 831 months in prison. This sentence was at the lowest end of the standard range of 831 months to 1141 months, as set forth in RCW 9.94A.510.

Keodara appealed his convictions and sentence to this court. We affirmed Keodara's convictions but remanded for resentencing because the sentencing court had imposed a sentence that was, in effect, a life sentence without first adequately considering Keodara's youth and individual circumstances, as required by Eighth Amendment case law. See State v. Keodara, No. 70518-1-I,

---

[1] The crimes are detailed in State v. Keodara, 191 Wn. App. 305, 364 P.3d 777 (2015), review denied, 185 Wn.2d 1028 (2016).

slip op. at 19 (Wash. Ct. App. Nov. 2, 2015) (published in part)
http://www.courts.wa.gov/opinions/pdf/705181.pdf at 19.

On remand, a new sentencing hearing was held. Prior to the hearing, Keodara submitted 240 pages of mitigation materials. The materials included Keodara's mental health assessments, details about his difficult childhood, and educational materials explaining the effects of maltreatment on brain development. Keodara also presented testimony from his mother and psychologist, both of whom testified to Keodara's difficult childhood and to the impact that his difficult childhood had on his psychological health.

Before announcing Keodara's sentence, the trial court emphasized that it had, on several occasions, reviewed all of the information submitted to the court. It also explained that it had considered Keodara's age at the time of the crime, his family and home environment, his susceptibility to influence from older individuals, and his possibility of rehabilitation in reaching a decision about his sentence.[2] Upon considering Keodara's youth, the court imposed an exceptional sentence of 480 months in prison.[3] The sentence is almost 30 years below the lowest end of the standard range—831 months.

Keodara again appeals.

---

[2] The trial court entered extensive findings of fact and conclusions of law, as to the impact of his youth, as supplements to the judgment and sentence.

[3] Keodara was sentenced to 240 months for the murder in the first degree conviction. He was sentenced to 87 months for the unlawful possession of a firearm in the first degree conviction. He was given three separate 93 month sentences for each of the three convictions for assault in the first degree. He was also given four separate 60 month sentences for the firearm enhancements to the murder and the assault convictions. The sentences for the murder, assaults, and possession of a firearm convictions were ordered to run concurrently (for a total of 240 months.) The sentences for the four firearm enhancements were ordered to run consecutively (for a total of 240 months.) Thus, the total sentence was for 480 months of incarceration.

II

Keodara's primary contention on appeal is that the procedure at his sentencing hearing fell short of that required by Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Keodara's assertion reflects a fundamental misunderstanding of the Miller decision and of the Eighth Amendment, upon which Miller was grounded.

The Eighth Amendment[4] concerns itself with actual punishment. It is not a procedural guarantee.

The import of Miller was explained by the United States Supreme Court in a later decision. In Miller,

> the Court held that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing.

Montgomery v. Louisiana, __ U.S. __, 136 S. Ct. 718, 725, 193 L. Ed. 2d 599 (2016). More specifically,

> Miller held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on "'cruel and unusual punishments.'" Id., at __, 132 S. Ct., at 2460. "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence," mandatory life without parole "poses too great a risk of disproportionate punishment." Id., at __, 132 S. Ct., at 2469. Miller required that sentencing courts consider a child's "diminished culpability and heightened capacity for change" before condemning him or her to die in prison. Ibid. Although Miller did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect "'irreparable corruption.'" Ibid.

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

(quoting Roper v. Simmons, 543 U.S. 551, 573, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)).

Montgomery, 136 S. Ct. at 726.

In Montgomery, the high court made explicit that Miller announced "a new substantive rule of constitutional law." Montgomery, 136 S. Ct. at 729. Such rules, the Court cautioned, are to be distinguished from "procedural rules." Montgomery, 136 S. Ct. at 729. To be sure, Miller conferred a "substantive constitutional right." Montgomery, 136 S. Ct. at 732. The right was substantive, the Montgomery Court explained, because "[p]rotection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment." Montgomery, 136 S. Ct. at 732.

> These considerations underlay the Court's holding in Miller that mandatory life-without-parole sentences for children "pos[e] too great a risk of disproportionate punishment." 567 U.S., at __, 132 S. Ct., at 2469. Miller requires that before sentencing a juvenile to life without parole, the sentencing judge take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Ibid. The Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of "children's diminished culpability and heightened capacity for change," Miller made clear that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." Ibid.

Montgomery, 136 S. Ct. at 733–34. The Court then explained,

> [b]ecause Miller determined that sentencing a child to life without parole is excessive for all but "'the rare juvenile offender whose crime reflects irreparable corruption,'" 567 U.S., at __, 132 S. Ct., at 2469 (quoting Roper, supra, at 573, 125 S. Ct. 1183), it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders

whose crimes reflect the transient immaturity of youth. As a result, Miller announced a substantive rule of constitutional law.

Montgomery, 136 S. Ct. at 734 (citation omitted).

But there is even more to be learned about Miller from the Montgomery opinion.

> To be sure, Miller's holding has a procedural component. Miller requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence. . . . *Those procedural requirements do not, of course, transform substantive rules into procedural ones.*
> The procedure Miller prescribes is no different. A hearing where "youth and its attendant characteristics" are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. 567 U.S., at __, 132 S. Ct., at 2460. The hearing does not replace but rather gives effect to Miller's substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.

Montgomery, 136 S. Ct. at 734-35 (emphasis added).

Miller thus established two inter-related, substantive constitutional rules. The Eighth Amendment prohibits both (1) the mandatory imposition of a life-without-parole sentence on a juvenile offender, and (2) the imposition of a life-without-parole sentence on a juvenile offender whose crime reflects transient immaturity, as opposed to irretrievable depravity.

Our Supreme Court undertook an application of Miller just last year. In State v. Ramos, the court held that "Miller applies equally to literal and de facto life-without-parole sentences." 187 Wn.2d 420, 437, 387 P.3d 650, cert. denied, 138 S. Ct. 467 (2017). The court described a de facto

life sentence as follows: "a total prison term exceeding the average human life-span—that is, a de facto life sentence." Ramos, 187 Wn.2d at 434.

The Supreme Court then applied the Miller guarantees to the de facto life sentence imposed on Ramos. In so doing, it set forth the rule of Miller: "Miller establishes a substantive rule that a life-without-parole sentence *cannot be imposed* on a juvenile homicide offender whose crimes reflect transient immaturity." Ramos, 187 Wn.2d at 436 (emphasis added). Applying this to Ramos's situation, the court explained that

> Ramos was in fact sentenced to die in prison for homicide offenses he committed as a juvenile. Miller plainly provides that a juvenile homicide offender *cannot be sentenced to die in prison* without a meaningful opportunity to gain early release based on demonstrated rehabilitation unless the offender first receives a constitutionally adequate Miller hearing.

Ramos, 187 Wn.2d at 440 (emphasis added).

The import of the discussions in Montgomery and Ramos is that they make clear that Miller, as an Eighth Amendment case, is concerned with the *punishment imposed*. The Miller rule is applicable when a juvenile offender is sentenced to die in prison (as a result of the imposition of either a literal or a de facto life-without-parole sentence).

Here, Keodara was not sentenced to die in prison. The sentencing judge found that he had proved that he deserved an exceptional sentence below the standard range. Such a sentence was imposed. The 40-year sentence imposed is not a *de facto* life sentence. Should Keodara serve

the full sentence, he will be age 58 upon release.[5] His life expectancy, as predicted by official state records, is 77 years.[6]

Because Keodara did not receive a literal or a de facto life-without-parole sentence, Miller does not apply to appellate review of his sentence.[7]

### III

The fact that Keodara was not sentenced to die in prison does not mean that the Eighth Amendment has no applicability to the sentence imposed upon him. In fact, as the recipient of a less-than-life sentence, Keodara's sentence, on appellate review, is measured against the requirements of State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017). In that decision, our Supreme Court noted that

> "[C]hildren are different." Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 2470, 183 L. Ed. 2d 407 (2012). That difference has constitutional ramifications: "An offender's age is relevant to the Eighth Amendment, and [so] criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." Graham v. Florida, 560 U.S. 48, 76, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); U.S. CONST. amend. VIII.

---

[5] If he earns early release, Keodara may be released as early as age 39.

[6] When life expectancy is at issue in litigation, the Washington Pattern Jury Instructions contain a suggested pattern jury instruction addressing the issue. That instruction, WPIC 34.04 (6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 34.04 (6th ed. 2012)), allows the jury to be instructed on a person's life expectancy based on data routinely gathered by the Washington Insurance Commissioner. See 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL APPENDIX B LIFE EXPECTANCY TABLE, at 665-68 (6th ed. 2012). Our statement as to Keodara's life expectancy is based on that data. See Life-expectancy table, Office of the Insurance Commissioner Washington State (April 18, 2018, 10:46 a.m.), https://insurance.wa.gov/life-expectancy-table.

[7] Keodara's appellate contention is that Miller set forth a *procedural right*. That right, Keodara avers, is to have his sentencing hearing proceed in a particular fashion, with the court considering certain factors, *regardless of the sentence actually imposed*. This is wrong. Miller ensures that only juveniles who manifest irretrievable depravity are sentenced to die in prison. The Eighth Amendment does not require an inquiry into irretrievable depravity as a precursor to a sentence such as that imposed on Keodara.

Houston-Sconiers, 188 Wn.2d at 8. Thus, a rule was announced.

> Because "children are different" under the Eighth Amendment and hence "criminal procedure laws" must take the defendants' youthfulness into account, sentencing courts must have absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements when sentencing juveniles in adult court, regardless of how the juvenile got there.

Houston-Sconiers, 188 Wn.2d at 9. This rule led to the court's holding.

> [W]e hold that sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system, regardless of whether the juvenile is there following a decline hearing or not. To the extent our state statutes have been interpreted to bar such discretion with regard to juveniles, they are overruled. Trial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements.

Houston-Sconiers, 188 Wn.2d at 21 (footnote omitted). Accordingly, the Supreme Court ruled, the court that sentenced Houston-Sconiers had erred by reasoning that, in sentencing him, it was statutorily required to impose mandatory firearm enhancements to be served consecutively. Houston-Sconiers, 188 Wn.2d at 25-26.

No such error occurred herein. At Keodara's sentencing hearing, the court considered extensive written submittals. It considered, and entered findings and conclusions describing, the impact of his youth on his criminal culpability. It found that Keodara proved by a preponderance of the evidence that he was entitled to an exceptional sentence below the standard range. And it imposed just such a sentence.

The standard range sentence applicable to Keodara was 831 months to 1141 months in prison. The superior court sentenced him to an exceptional sentence downward: a total of 480 months. The sole reason given for this sentence was Keodara's youth.

On appeal, Keodara mistakenly claims that the trial court erred by imposing four consecutive 60-month firearm enhancements. This is not so. The trial court plainly understood that it had the discretion not to do so. However, it chose to structure its leniency by drastically reducing the period of incarceration it imposed on the murder conviction—reducing that part of the sentence to 240 months. It then ordered that the base sentences for Keodara's four other convictions be served concurrently with the murder sentence. "[A]n exceptional sentence may be for a reduced term of years, for concurrent rather than consecutive sentences, or both." Ramos, 187 Wn.2d at 434.

The trial court exercised its discretion, based solely on Keodara's youth, and determined that he should receive an exceptional sentence below the standard range. The trial court then again exercised its discretion, based solely on Keodara's youth, and structured the exceptional sentence so that it totaled 480 months—351 months below the lowest end of the standard range. By recognizing that it had such discretion—and by exercising that discretion in good faith—the sentencing court fully complied with the requirements of Houston-Sconiers.

Affirmed.

We concur:

_Spearman, J._

_Dwyer, J._

_Appelwick, C.J._