IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77426-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DAVID BRENT HAGGARD, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: June 3, 2019 |

HAZELRIGG-HERNANDEZ, J. — David B. Haggard seeks reversal of his convictions for arson and burglary, arguing that he was sentenced based on an improper offender score. Haggard contends that his score was miscalculated because a misdemeanor conviction dismissed after successful completion of a deferred sentence should not have interrupted the washout period for his prior class C felony convictions. Because the plain language of the statute is unambiguous and does not indicate that the legislature intended dismissal to be equivalent to vacation, we affirm.

FACTS

David Haggard was convicted of three felonies in California in 2002, 2004, and 2005. He was released from incarceration for the last of these offenses on May 22, 2008. Haggard was charged with assault in the fourth degree in Snohomish County District Court for events occurring in late 2010 and pleaded

guilty to the reduced charge of disorderly conduct. Haggard received a deferred sentence. On March 1, 2012, the Snohomish County District Court found Haggard to be in compliance with the conditions of his deferred sentence and dismissed the case ex parte.

In this case, Haggard was charged with arson in the second degree and burglary in the second degree for events that took place on June 5, 2016. The trial court engaged in a full colloquy with Haggard and found that he knowingly, voluntarily, and intelligently waived his right to a jury trial and stipulated to the facts. The court found sufficient facts beyond a reasonable doubt to convict Haggard of both arson in the second degree and burglary in the second degree.

The State filed a memorandum detailing the timing of Haggard's prior convictions, which affected his offender score. The State argued that the critical distinction between dismissal and vacation was that a prior vacated offense would not impact a future offender score. Because Haggard's 2010 conviction had been dismissed but not vacated, the State contended that he was not entitled to exclude his prior California felony convictions from the offender score calculation. Haggard argued in response that the supreme court's analysis of the analogous felony dismissal and vacation statutes compelled the conclusion that a misdemeanor dismissed after a deferred sentence may not be included when calculating an offender score.

The court also heard oral argument on Haggard's offender score. The State argued that the governing statute specifically states that vacated convictions will not be used to calculate a future offender score but does not provide the same

benefit to charges dismissed after a deferred sentence. Haggard responded that the distinction between "vacation" and "dismissal" was artificial and the two terms were interchangeable for misdemeanor convictions. He argued that the two statutes recognized a procedural distinction and applied in different stages: dismissal when the trial judge still had jurisdiction over a defendant and vacation when the trial court no longer had jurisdiction because the defendant's probation had expired.

Haggard argued that the statute was ambiguous because it was unclear whether vacation under RCW 9.96.060 had a different legal effect than a dismissal under RCW 3.66.067, and the court should apply the rule of lenity in his favor. The State responded that RCW 9.96.060 was not ambiguous because it was a general, stand-alone statute that applied to all courts in which a defendant seeks vacation of a misdemeanor. The trial court found that the statute was not ambiguous and that it was clear from the language of the statute that the defendant had to petition the court and give notice to the prosecutor to have the conviction vacated. Only then would the court exclude the prior conviction when calculating an offender score. Therefore, the court found that Haggard's dismissed misdemeanor conviction interrupted the washout period for his prior felonies because the misdemeanor was not vacated.

Because Haggard's prior felonies did not wash out, the court determined that he had an offender score of six. Haggard was sentenced to 39 months imprisonment on the arson charge and 29 months on the burglary charge. The sentencing hearings for this matter and another case in which Haggard was

convicted of unlawful possession of a firearm and violation of the Uniform Controlled Substances Act occurred simultaneously. All four sentences were ordered to run concurrently. Haggard timely appealed. Haggard also appealed this same issue with a separate Statement of Additional Grounds for Review in State of Washington v. David B. Haggard, No. 77427-1-I.

## DISCUSSION

### I. Offender Score

Haggard contends that his dismissed 2010 conviction should not have been included in his criminal history when calculating his offender score because dismissal of a misdemeanor conviction is equivalent to vacation of that conviction.

We review both offender score calculations and questions of statutory construction de novo. State v. Mutch, 171 Wn.2d 646, 653, 254 P.3d 803 (2011); State v. Breazeale, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001). Our objective when interpreting a statute is to determine the legislature's intent. State v. Jones, 172 Wn.2d 236, 242, 257 P.3d 616 (2011). We will give effect to the plain meaning of a statute if it is evident from the text of the statute itself and context within the statutory scheme. Id. If the statute is susceptible to more than one reasonable interpretation, it is ambiguous. Id.

A defendant's offender score is calculated according to RCW 9.94A.525. Generally, prior felony convictions each count as one point toward the offender score, except in certain specific circumstances set out in the statute. RCW 9.94A.525. However, some prior class C felonies can "wash out" (that is, be excluded from the calculation) if the offender spent five consecutive years in the

community without committing any crime that results in a conviction since the last date of confinement. RCW 9.94A.525(2)(c). The issue before the trial court was whether Haggard's dismissed 2010 conviction interrupted the washout period for his prior class C felony offenses.

Courts of limited jurisdiction may dismiss misdemeanor offenses under RCW 3.50.320 and RCW 3.66.067.[1] On a showing of good cause during a deferred sentence, the court may allow the defendant to withdraw a guilty plea, enter a plea of not guilty, and dismiss the charges. RCW 3.50.320; RCW 3.66.067. The dismissal statutes do not limit the number of deferred sentences a person may receive or the number of cases that may be dismissed. RCW 3.50.320; RCW 3.66.067. Although the statutes do not explicitly state the effect that dismissal has on a defendant's criminal history, Division Three of this court has remarked that "[n]othing in RCW 3.66.067 implies that a conviction is automatically deleted or expunged from the criminal record after dismissal." State v. Gallaher, 103 Wn. App. 842, 844, 14 P.3d 875 (2000).

A person convicted of a misdemeanor offense who has satisfied the terms of the sentence may apply to the sentencing court for vacation of the conviction. RCW 9.96.060(1). The court may in its discretion vacate the record of conviction if the applicant qualifies under the relevant statute. RCW 9.96.060(1)–(2). Certain offenses, including violent offenses, driving under the influence offenses, and sex offenses, are not eligible for vacation. RCW 9.96.060(2)(b)–(c). If the court

---

[1] Although RCW 3.50.320 applies to municipal courts and RCW 3.66.067 applies to district courts, the provisions of the two statutes are functionally identical.

vacates the record of conviction, the applicant "shall be released from all penalties and disabilities resulting from the offense and the fact that the person has been convicted of the offense shall not be included in the person's criminal history for purposes of determining a sentence in any subsequent conviction." RCW 9.96.060(5)(a). A person may not have a misdemeanor conviction vacated if "[t]he applicant has ever had the record of another conviction vacated." RCW 9.96.060(2)(h).

Apart from the limited reference in State v. Gallaher, 103 Wn. App 842, 14 P.3d 875 (2000), Washington courts do not seem to have addressed the relationship between the misdemeanor dismissal and vacation statutes. However, the Ninth Circuit Court of Appeals has considered whether a federal defendant's prior Washington state misdemeanor conviction, which had been dismissed under RCW 3.66.067, could be used in calculating his offender score. United States v. Vassar, 40 Fed. Appx. 463, 465 (9th Cir. 2002) (unpublished). The court found nothing in the misdemeanor statute evidencing the legislature's intent that the dismissed conviction be set aside or expunged from the record. Id. at 466. The Ninth Circuit relied on this court's statement about the misdemeanor statute in Gallaher for support of that proposition. Id. Ultimately, the court concluded that the district court had properly included the defendant's dismissed misdemeanor conviction as part of his criminal history when calculating his offender score. Id. at 466.

The Washington Supreme Court considered a similar issue concerning analogous felony statutes in In re Carrier, 173 Wn.2d 791, 272 P.3d 209 (2012).

In Carrier, the petitioner argued that the trial court improperly counted a dismissed felony conviction as a strike in his criminal history. Id. at 796. He argued "that dismissing a conviction pursuant to former RCW 9.95.240 is equivalent to vacating a conviction under former RCW 9.94A.640" and "that the two statutes have the same legal effect in removing convictions from a defendant's criminal history." Id. at 804.

The Carrier court discussed its prior decision regarding the relationship between the felony dismissal and vacation statutes in Breazeale. The court clarified that its holding in Breazeale was "that a court's dismissal of a pre–SRA conviction pursuant to former RCW 9.95.240 has the same legal effect as vacating the conviction under the SRA." Carrier, 173 Wn.2d at 806. The court acknowledged that Carrier would prevail under the rationale in Breazeale, but went on to note that the legislature had amended RCW 9.95.240 in response to Breazeale to require a two-step process to vacate pre-SRA convictions. Id. at 806–07. However, the court concluded that Carrier was entitled to relief because the amendment did not apply to him retroactively. Id. at 818–19.

In his written argument to the trial court, Haggard drew the court's attention to the Supreme Court's comment in Carrier that Breazeale would compel the conclusion that Carrier's dismissed conviction should not have been included in the calculation of his offender score if not for the subsequent amendment to the statute. He contended that, because the misdemeanor statute was not similarly amended, Breazeale controls the result in this case. However, the court in Breazeale relied on the language of the felony dismissal statute mandating that,

after dismissal, the defendant "'shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted.'" Breazeale, 144 Wn.2d at 835 (quoting former RCW 9.95.240). This language was common to both the dismissal and vacation statutes. Id. at 837. The court had previously interpreted that statement "to mean that a person who has been granted dismissal under RCW 9.95.240 is entitled to assert that he or she has never been convicted." Id. (citing In re Discipline of Stroh, 108 Wn.2d 410, 417–18, 739 P.2d 690 (1987)). This language does not appear in the misdemeanor dismissal statutes. RCW 3.50.320; RCW 3.66.067.

The language of the misdemeanor dismissal and vacation statutes is clear and unambiguous. Although the misdemeanor dismissal statutes do not explicitly state the effect of dismissal on the defendant's record, the existence of a separate procedure for vacation implies that the legislature did not intend for a dismissal to automatically have the same effect as a vacation. The vacation statute contains numerous limitations that are not present in the dismissal statutes, including restrictions on the offenses that are eligible for vacation and the number of convictions that a person may have vacated. A defendant must also apply to the court for vacation, while dismissal can be carried out ex parte, as it was in this instance. Therefore, we find that the two procedures are not equivalent and dismissal does not automatically have the same effect as vacation. The trial court correctly found that Haggard's dismissed 2010 conviction interrupted the washout period for his prior felonies, and did not err in sentencing him based on an offender score of six.

II.    Statement of Additional Grounds

In a Statement of Additional Grounds, Haggard contends that the trial court erred in denying his motions to compel production of evidence and his motion to suppress evidence stemming from an allegedly defective search warrant. Haggard primarily relies on the briefing filed below and adopts the arguments raised by trial counsel.

In July 2016, Detective Christina Bartlett applied for a warrant to search the property where Haggard and his sister, Jamie,[2] had been living before Jamie's disappearance. During the execution of that warrant on July 15, 2016, officers discovered evidence of the crimes with which Haggard was later charged in this case. Haggard subpoenaed a copy of the affidavit supporting the search warrant and King County Sheriff's Office provided him with a redacted copy.

A. Motions to Compel

Haggard contends that the trial court erred in denying two motions to compel production of evidence. The first motion sought to compel an unredacted copy of Det. Bartlett's affidavit in support of the search warrant, but the State objected on the grounds that disclosure would compromise the ongoing investigation into Jamie's disappearance. The trial court reviewed the unredacted warrant affidavit in camera and denied the motion to compel. The second motion sought production of investigative records pertaining to Jamie's disappearance.

---

[2] To avoid confusion, Jamie Haggard will be referred to by her first name. We intend no disrespect.

The trial court also denied this motion. The record on appeal is insufficient to allow for our review of these rulings.

B. Motion to Suppress

Finally, Haggard contends that the trial court erred in denying his motion to suppress evidence obtained from the execution of a search warrant at his residence. He argues that the warrant was neither supported by probable cause nor constrained by adequate particularity, and that Det. Bartlett recklessly omitted material information from her affidavit. He also claims that the search exceeded the scope of the warrant and that witness statements obtained during the execution of the warrant should have been excluded.

Conclusions of law in an order pertaining to suppression of evidence are reviewed de novo. State v. Gaines, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). We review challenged findings of fact for substantial evidence. State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009). Unchallenged findings of fact are viewed as verities on appeal. Gaines, 154 Wn.2d at 716.

Haggard moved to suppress the evidence collected during the searches of his residence on July 15, 2016 and September 1, 2016, as well as the "search of his private affairs" on August 18, 2016, arguing that they violated his constitutional rights. In his motion to suppress, Haggard raised various arguments challenging all three searches. In his Statement of Additional Grounds, Haggard assigns error only to the denial of the motion to suppress evidence obtained from the search warrant executed on July 15, 2016.

### 1. Issuance of Warrant

#### a. Probable Cause

First, Haggard argues that the affidavit in support of the search warrant did not establish probable cause to believe that evidence of specific criminal activity would be found in his residence. Haggard contends that there was no probable cause to believe that Jamie was murdered or that there would be evidence of criminal activity in the place to be searched or items to be seized. The trial court found that there was sufficient probable cause detailed in the affidavit to allow a search of the premises.

A magistrate may only issue a search warrant after a showing of probable cause. State v. Clark, 143 Wn.2d 731, 747, 24 P.3d 1006 (2001) (citing U.S. CONST. amend. IV). Probable cause requires only a probability of criminal activity, not a prima facie showing. Id. at 748. If the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that a person is probably involved in criminal activity and the evidence of the crime could be found in the place to be searched, probable cause exists. State v. Thein, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Generally, appellate courts review the issuance of a search warrant only for abuse of discretion, giving great deference to the issuing judge or magistrate. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). However, when the trial court has reviewed the affidavit supporting the warrant after a motion to suppress, the trial court's finding of probable cause is a legal conclusion that we review de novo. Id.

In the affidavit, Det. Bartlett states that Jamie; her half-brother, Haggard; his girlfriend, Carlee Chew; and Jason Nolte lived together in the Kenmore house. Jamie disappeared without notice to anyone, including the person with whom she had plans the day after her disappearance. She had been involved in a physical altercation with Haggard the day before she disappeared. Haggard filled in a hole at the property soon after her disappearance and impersonated Jamie in a text message to their sister. Additionally, Haggard's accounts of the events leading up to Jamie's disappearance changed multiple times over the course of his contacts with police. Because the affidavit sets forth these facts, which are sufficient for a reasonable person to conclude that Haggard was involved in criminal activity and evidence of that activity could be found in the residence, probable cause existed to issue the warrant.

b. Particularity

Haggard also argues that the warrant was overbroad because it lacked sufficient particularity as to the items to be seized. Specifically, Haggard contends that the warrant allowed property belonging to other residents of the house to be seized because it did not provide objective standards for distinguishing between Jamie's belongings and the belongings of the other residents.

Det. Bartlett's affidavit said that she believed that evidence of Jamie's murder could be found at the Kenmore house, in Haggard's truck, in Nolte's car, and in the phone records of the relevant parties. The affidavit listed a specific date range for the cell phone data and position information to be searched. The affidavit also listed examples of items in the house that would help to establish whether

Jamie was missing voluntarily, including "clothes, phones, belongings, medications, prescriptions (given her abuse of narcotic pain pills), purses, suitcases, documents, diaries, etc." Haggard had stated to officers that Jamie had driven Nolte's car the night before she disappeared and he believed she had been in his truck since her disappearance. The trial court did not see any problems with the particularity of the warrant because the items listed were related to the suspected homicide.

"A warrant is overbroad if it fails to describe with particularity items for which probable cause exists to search." State v. Keodara, 191 Wn. App. 305, 312, 364 P.3d 777 (2015) (citing State v. Maddox, 116 Wn. App 796, 805, 67 P.3d 1135 (2003)). A warrant is not necessarily impermissibly broad solely because it lists generic classifications. Id. at 313 (citing State v. Stenson, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997)). Washington courts have upheld such general descriptions as "specific items plus any other evidence of the homicide . . . any and all evidence of assault and rape included but not limited to . . . specified items," and "trace evidence from the victim in the van." Clark, 143 Wn.2d at 754–55 (internal quotation marks omitted) (quoting State v. Reid, 38 Wn. App. 203, 211–12, 687 P.2d 861 (1984); State v. Lingo, 32 Wn. App. 638, 640–42, 649 P.2d 130 (1982)). However, "blanket inferences and generalities cannot substitute for the required showing of 'reasonably specific "underlying circumstances" that establish evidence of illegal activity will likely be found in the place to be searched in any particular case.'" Keodara, 191 Wn. App. at 313 (quoting Thein, 138 Wn.2d at 133).

Here, although the warrant contains generic classifications of the items to be searched and seized, it gives sufficient guidance to officers to prevent them from "mak[ing] the search a 'general, exploratory rummaging in a person's belongings.'" Clark, 143 Wn.2d at 755 (quoting Andresen v. Maryland, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)). The listed items were all related to the disappearance and suspected homicide of Jamie Haggard. The warrant was not impermissibly broad.

### c. Reckless Omission

Haggard argues that Det. Bartlett recklessly omitted from her affidavit the fact that Nolte was in jail at the time of Jamie's disappearance, knowing "that the court would draw unfair inferences as to the likelihood of [Nolte's] involvement in criminal activity." The trial court concluded that Det. Bartlett did not recklessly omit any relevant information from her affidavit.

In order to invalidate the warrant on this basis, the defendant must show evidence of a deliberate, material omission or statements made in reckless disregard of the truth, rather than simply negligence or innocent mistake. Clark, 143 Wn.2d at 751. "A trial court's finding on whether an affiant deliberately excluded material facts is a factual determination, upheld unless clearly erroneous." Id. at 752 (citing State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)). Therefore, although the court listed its finding that Det. Bartlett did not recklessly omit any relevant information from her affidavit as a conclusion of law, we review it as a factual determination.

- 14 -

Haggard contends that the affidavit "gives rise to a clear inference that her disappearance may be linked to the jealous, assaultive boyfriend [Nolte]." However, although Nolte is mentioned throughout the affidavit, the main focus of the affidavit seems to be Haggard's statements and actions leading up to and following Jamie's disappearance. Det. Bartlett's affidavit does not explicitly state that Nolte was in jail when Jamie disappeared, but it does state that he was arrested for domestic violence assault on June 8, 2016 and that Haggard filled in the pond "while Nolte was incarcerated." These references indicate that the lack of an explicit statement that Nolte was in jail when Jamie disappeared was more likely negligence or an innocent mistake rather than a deliberate or reckless omission. Haggard has not shown that Det. Bartlett deliberately excluded material facts from her affidavit, and therefore the court's finding is not clearly erroneous.

2. Scope of Warrant

Next, Haggard argues that the law enforcement officers who executed the warrant exceeded its scope by searching and seizing property unrelated to the target of the search warrant. Haggard contends that moving a welder to locate its serial number constituted a warrantless search and seizure because the warrant did not authorize them to move the welder. The trial court found it "very clear" that the serial number was in plain view because it was on the front of the welder and exposed. Therefore, the court found that there was no warrantless search or seizure of the welder when the serial number was in plain sight on the front of the equipment. In its written findings, the court concluded that the welder was in plain view in a common area of the house, and taking a picture of an object in plain view

- 15 -

at a scene violates neither Article I, Section 4 of the Washington State Constitution nor the Fourth Amendment to the United States Constitution. We review this conclusion of law de novo. Gaines, 154 Wn.2d at 716.

Detective Kathleen Decker testified at the CrR 3.6 hearing that she participated in the search of the Kenmore house on July 15, 2016. She oversaw the search-and-rescue personnel and took photographs of the scene. During the search, she noticed a large metal arc welder located in the breezeway between the residence and the garage. She was asked to photograph the welder and she did so. She testified that, although the welder was moved slightly while being photographed, she was able to see the front of the welder without moving it and that the serial number was printed on the front of the welder. Det. Bartlett had told her that the welder was suspected stolen property, and Det. Decker knew that the purpose of photographing the welder was to document the serial number to research whether it was stolen.

Recording serial numbers that are in plain view does not constitute a search or seizure. Arizona v. Hicks, 480 U.S. 321, 324–25, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987). In Hicks, a police officer searching an apartment for evidence of a shooting noticed expensive stereo equipment that seemed out of place in the "squalid and otherwise ill-appointed four-room apartment." Id. at 323. He recorded the serial numbers to check if the equipment was stolen, but had to move components of the equipment to find the numbers. Id. The Court found that moving suspected stolen property in order to locate the serial number constituted a search that must be supported by authority of law. Id. at 324–25.

- 16 -

Unlike the serial numbers on the equipment in <u>Hicks</u>, the serial number on the welder was clearly visible before it was moved. Because the serial number was in plain view, photographing that number did not constitute a separate search or seizure. The trial court did not err in finding that recording this information did not violate Haggard's constitutional rights.

### 3. Statements of Carlee Chew and Jason Nolte

Finally, Haggard argues that Carlee Chew and Jason Nolte's statements to law enforcement officers when the warrants were executed should be excluded as fruits of the poisonous tree. Because we have concluded that the warrant was valid, Haggard has identified no basis to exclude these statements.

Affirmed.

WE CONCUR: