IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MATTER OF PERSONAL RESTRAINT OF | ) ) ) | No. 37289-8-III |
| RICHARD ELLIOTT CAIN | ) ) ) ) | UNPUBLISHED OPINION |

FEARING, J. — In this personal restraint petition, Richard Cain asserts that his trial counsel performed deficiently when failing to forward one argument in support of a motion to suppress, when failing to reference ER 105 when seeking a limiting instruction, and when waiving a second presentence investigation report. We hold that trial counsel performed ineffectively only when failing to cite the applicable evidentiary rule, but that such error did not cause Cain prejudice. We dismiss his personal restraint petition.

FACTS

We take most of our factual recital from our earlier decision in *State v. Cain*, No. 34417-7-III (Wash. Ct. App. Mar. 8, 2018) (unpublished), https://www.courts.wa.gov/ opinions/pdf/344177_unp.pdf. We assign fictitious names to the alleged minor victim and her two siblings.

Petitioner Richard Cain and Lisa Madson engaged in a sporadic relationship from 2004 to 2010. Madson had two children borne of a prior relationship: the alleged victim Erin, a girl born in 1999, and a boy Uriah, born in 2002. When cohabitating, Cain and Madson resided in various homes, the latest of which was Cain's Prosser mobile home. In March 2009, Madson bore Cain's daughter, Julie.

Lisa Madson worked various jobs in Prosser while cohabitating with Richard Cain. Cain spent time alone with the children due to Madson's work schedule. Not long after Julie's first birthday in 2010, Madson and Cain separated permanently, with Madson and the three children moving into a Prosser apartment. Cain thereafter occasionally came to the apartment to care for the children in Madson's absence.

The State contended at trial that Richard Cain's sexual practices bore relevance to his prosecution. Cain frequently tied girlfriend Lisa Madson for his sexual gratification during intercourse. Cain possessed ropes, ties, and handcuffs to bind either Madson's hands or feet depending on the couple's desired sexual position. Cain admitted during trial testimony that he enjoys restraining a woman during sex if the woman desires such.

Erin cannot recollect specific dates that Richard Cain molested her, but stated that the abuse occurred from July 2006 to April 2011, when Erin was between ages six and ten. The abuse occurred in a series of residences, in which Cain, Lisa Madson, and Madson's children resided.

According to Erin, Richard Cain first sexually touched her after school one day during her mother's absence. Erin, as part of her weekday routine, finished her homework and watched television when Cain hoisted Erin, carried her into Cain's bedroom, and placed her on his bed. During trial testimony, Erin described the first act of molestation as Cain rubbing his penis against her vagina and buttocks. She did not respond for fear of being physically struck.

During trial, Erin described the abuse from Richard Cain as ongoing. She recalled situations when Cain placed his mouth on or around her pelvic region, placed her hand on his penis, and rubbed his penis in and around her buttocks and genitals. Erin also testified that Cain bound her hands with the tie from her mother's robe and then touched her genitals.

During trial testimony, Uriah Madson remembered Richard Cain and Erin spending time after school locked inside Cain's bedroom. Joanne Carow, Lisa Madson's mother, testified that she noticed Cain showing Erin more affection than Uriah and remembered Erin and Cain once snuggled on the couch, while Erin wore no shirt.

After separating from Richard Cain, Lisa Madson discovered, in her apartment, a drawing of a human body with a penis. A perturbed Madson confronted Erin and Uriah as to the drawer of the image. Uriah admitted to drawing the picture. Lisa then asked her two oldest children if either had been touched inappropriately, and Erin responded

3

affirmatively. After Erin disclosed the abuse, Madson destroyed the robe from which

Cain took the tie to bind Erin's hands.

Lisa Madson informed law enforcement of Erin's disclosure of sexual misconduct

of Richard Cain. Law enforcement then conducted a forensic interview and a physical

examination of Erin. Law enforcement thereafter arrested Cain.

Detective Scott Runge of the Benton County Sheriff's Office sought and obtained

a warrant to search Richard Cain's mobile home on June 15, 2011. At approximately

7:00 a.m. on June 16, 2011, Detective Runge and other officers executed the search

warrant. Cain remained in jail at the time. When law enforcement arrived at Cain's

home, the search warrant did not list the specific items to be seized.

According to Detective Scott Runge's report, he and other officers performed a

security sweep of the exterior of the property. Officers then entered Richard Cain's

home, in which they found dozens of marijuana plants. Runge explained in his report:

> After it was determined that the house was empty and secured we
> exited the residence so I could perform an amendment to the search warrant
> [to include the marijuana].
> As I was attempting to locate Judge Mitchell, Detective Magnuson
> took a look at the search warrant. He noted that I forgot to list the specific
> items to be seized in the search warrant. The items listed were in the
> affidavit but not the search warrant itself. I told him that I would contact
> Judge Mitchell to make the correction.
> As I made numerous phone calls I learned that Judge Mitchell was
> not scheduled until 0900hrs for Franklin County. I requested that the clerks
> attempt to call him on his cell phone and pass him a message for him to call
> me.

4

Personal Restraint Petition (PRP), Exhibit B. Detective Runge's report continues:

> At approximately 0840hrs, I received a phone call from Judge Mitchell. I went over the mistake I had made on the search warrant and he stated that he must have missed it too. I asked him if he would be okay to telephonically request permission to fix the warrant and to request the amendment for the warrant regarding the Marijuana. Judge Mitchell stated that would be fine.

Clerk's Papers (CP) at 120.

> Detective Erik Magnuson's report coincides with Detective Runge's report:

> I told case agent Runge about the [marijuana] odor and then continued to the door on the east side of the house. . . . While conducting this safety sweep I noticed over 20 plants being grown that I immediately recognized through my training and experience as Marijuana plants in the master bathroom. . . . After the house was secured I told case agent Runge about my observations. We all exited the residence and Detective Runge started working on amending the search warrant before we did any searching. While he was working on amending the search warrant[,] I walked around the outside of the house.

CP at 114. Detective Larry Smith's report is also consistent with Detective Runge's report:

> While securing the residence three marijuana grow rooms were locate[d] with in [sic] the home containing more than the 15 plants allowed for a Medical Marijuana grow. All officers left the residence at that time and waited for Det. Runge to obtain an addendum to the original warrant.

CP at 117.

At 8:50 a.m., Judge Mitchell granted approval to amend the warrant. With the amendment, the search warrant authorized officers to seize the following evidence related to Richard Cain's alleged crimes against Erin:

(1) Pictures of the residence and bedroom of Richard Elliot Cain (6/11/15);
(2) Rope, scarves, ties or any other device that can be used for binding;
(3) Any VHS, 8 mm, photographs, electronic storage devices to include but not limited to computers, hard drives, CDs, floppy disks, diskettes, iPods, cell phones w/ camera feature, and flash drives that could be used to store any depictions of child pornography;
(4) Documents of dominion.

CP at 113.

During the search of Richard Cain's residence, officers photographed bondage instruments, including handkerchiefs, scarves, belts, a ball gag, handcuffs, nylon bindings, ropes, a leather whip, and a paddle. The property inventory from the search outlined all items seized from Cain's residence. At the bottom of each page, Detective Scott Runge listed the date and time as June 16, 2011, 8:30 a.m., 20 minutes prior to the approval of the search warrant's amendment. Detective Runge addressed the inventory log in his declaration:

> I have also reviewed the inventory log showing that listed [sic] the date and time of the inventory at 8:30 am. At this point, almost 9 years later, I cannot remember exactly why I put the time as 8:30 am. Possibly, this was the time when entry was made into the house to conduct the security sweep. Possibly, I made an error. However, I am positive that law enforcement did not begin searching the premises, other than the security sweep, before the search warrant was amended to include the specific items to be seized pursuant to the child rape investigation.

Response to Personal Restraint Petition, Appendix G at 35.

PROCEDURE

The State of Washington charged Richard Cain, by second amended information, with one count of rape of a child in the first degree and one count of child molestation in the first degree. For both counts, the State alleged the aggravating circumstance of a position of trust.

Richard Cain's first trial resulted in a hung jury. The jury in Cain's second trial found him guilty on both counts. After Richard Cain's conviction, the Washington Department of Corrections (DOC) completed a presentence investigation report and recommended a sentence within the standard range. The trial court later granted Cain's motion for a new trial because of a violation of right to counsel during the second trial. The same superior court judge presided over the first two trials and the third trial.

Before Richard Cain's third jury trial, defense counsel sought to suppress evidence obtained from the search of Cain's home on the basis that officers engaged in a general search. Defense counsel did not argue that the search warrant for Richard Cain's home was invalid on the basis that it did not list the specific items to be seized prior to its amendment. The State requested that the trial court apply the severability doctrine to separate the items found with probable cause, including the bondage equipment. The trial court severed the warrant. The court ruled that, while officers potentially conducted a general search of the home, the bondage equipment was not found during a general search. Thus, the trial court admitted photographs of the bondage equipment found in

7

Cain's residence.

During the third trial, Richard Cain argued that Erin's allegations were false. Cain asserted that Erin's delayed disclosure of the alleged abuse demonstrated her lack of credibility. Cain contended that Lisa Madson was upset with Erin for reporting Madson's physical abuse to the school. Due to Erin's conflict with her mother, Cain asserted that Erin falsely claimed that he abused her to avoid her mother's fury and enter her mother's sympathy.

To rebut Richard Cain's contentions, the prosecution sought to introduce evidence that Erin delayed disclosing Richard Cain's abuse because she feared him based on his abuse and discipline of her, his possession of firearms, and his shooting a rabbit in her presence. Cain requested a limiting instruction pursuant to ER 404(b) to direct the jury to consider this evidence only to the extent it went to Erin's credibility. The proposed limiting jury instruction read:

> Certain evidence has been admitted in this trial for only a limited purpose. This evidence consists of testimony that Mr. Cain committed acts of physical and emotional abuse. That testimony may be considered by you only for the purpose of determining the credibility of the State's witness. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 385. The trial court refused the limiting instruction.

During its closing argument, the State argued that the bondage equipment found in Richard Cain's house evidenced his desire to bind women. The State highlighted the

photographs of Cain's bondage equipment.

During closing, the State relied on Erin's allegation of fearing Richard Cain in part

to challenge his credibility:

> Do you believe the defendant? Who in this courtroom, the only person who has a motive to be dishonest to you? That man (indicating). He's the only one. Did you evaluate his manner while testifying? What do you think? Did he come off as coached? That little banter that they had. Did you feel that he was robotic? Did you feel he was controlling? Did you get a mean vibe from him?
> It's no wonder these children were scared of the defendant, and did you think his testimony was reasonable in the context of all the other evidence?

Report of Proceedings (RP) at 1096-97.

During closing, the State also argued that fear caused Erin's delay in disclosing the

alleged abuse:

> Why did she [Erin] not tell? All of are you [sic] gonna go back there and think about that. Why didn't she tell her grandmother? Why didn't she tell the counselor? Why didn't she tell her friend? Why do kids not tell? Why do kids not tell? She was scared of him. Do you have any doubt that she was scared of him? Is there any doubt?
> You saw his manner up there testifying. You think that's a warm cat? Warm guy to hang out with? . . .
> . . . .
> He had guns. Tons of guns. You saw—you heard how many guns he had. He had guns. He even told you he would kill coyotes, stray dogs. You know what else he killed? Little bunnies in front of [Erin]. You think that freaked her out? He kept food from her. He would hit her. And her brother. And he was a black belt in Karate. We learned a lot about that over the course of this trial.

RP at 1106.

9

After closing arguments, defense counsel again raised his exception to the trial court's decision not to provide Richard Cain's proposed limiting instruction:

> MR. MARSHALL [defense counsel]: All right. I do want to amplify my exception to the Court's not giving the limiting instruction that we had proposed, the instruction that the jury not consider evidence of physical and emotional abuse by Mr. Cain except as it bore on the credibility of the State's witnesses.
>
> We object to the Court's refusal to give that instruction on the basis that it violates Mr. Cain's rights to due process of law under the State and federal constitutions and, to make sure the record is completely clear on this, I will now ask the court to give that as a supplemental instruction since I'm doing this because I didn't take exception before the Court gave the initial packet of instructions.
>
> THE COURT: All right. I want the record to reflect, and then I'm gonna ask Ms. Petra [the State's attorney] to respond, that I don't believe your exception is untimely because I did take the step of trying to point out to you differences between the instructions I actually gave and what had been presented, and I left that one out.
>
> MR. MARSHALL: Okay.
>
> THE COURT: And so I did not alert you to that, and I wanted the record to reflect that.
>
> Ms. Petra?
>
> MS. PETRA: No further argument.
>
> THE COURT: Okay. Well, the case has now been argued without that instruction. I think it would be clear error to give the instruction at this point in time, and, besides, I did not give it because, as I stated earlier, I believe that evidence was probative on more than just the credibility of [Erin]. It was probative on the question of why she delayed in reporting.

RP at 1138-40. The trial court refused to give the jury Cain's supplemental limiting instruction. In support of the instruction, defense counsel did not mention ER 105.

The jury found Richard Cain guilty of first degree child molestation and not guilty

of first degree child rape.  The jury also found that Cain used his position of trust to facilitate the molestation.

Before sentencing, the State informed the court that a presentence investigation (PSI) needed to be conducted.  The following colloquy then occurred:

> MS. PETRA: We also need to do a presentence investigation, your Honor.
> THE COURT: Yes.
> MS. PETRA: Ms. Sutton [other defense counsel], does your office want to be present for that?
> MS. SUTTON: We would, and there's already been one done.  I'm not sure if we need to do another one.
> MS. PETRA: That's a good point.
> THE COURT: I'm sorry, I didn't hear you.
> MS. SUTTON: There's already been a PSI completed.  I don't know why we would need another one at this point.
> MS. PETRA: I don't actually disagree with that.

RP at 1154-55.  The trial court did not order a presentence report.

During the sentencing hearing, the State's counsel mentioned during opening remarks:

> I've also noticed that we didn't do a PSI in this case.

RP (May 10, 2016) at 17.  Later defense counsel referenced appendix H to the 2014 judgment and sentence, which appendix the Department of Corrections prepared after the second trial and the first convictions.  Counsel commented:

> I also reviewed before coming here today the appendix H that was proposed by the Department of Corrections back in 2014 after Mr. Cain was found guilty then and one of the requirements that it proposed—I've seen this *as I'm sure you have* is upon release from prison Mr. Cain will be

11

required to participate in a sex offender treatment program assuming that the papers we are about to get says [sic] the same thing.

RP (May 10, 2016) at 20- 21 (emphasis added). The State's attorney then handed the sentencing court a copy of the 2014 appendix. The appendix mentioned release of Richard Cain from custody and his lifetime of community custody. Therefore, the appendix contained information covered in the 2014 presentence investigation report. The court referenced a section in the appendix. We do not know the extent to which the appendix overlapped with information contained in the report.

The trial court sentenced Richard Cain to 98 months' to life confinement, an aggravated exceptional sentence. The trial court entered the following findings of fact in support of the exceptional sentence:

> 1. The court finds that the defendant's standard range is 51-68 months.
> 2. The court finds that the defendant was trusted by [Erin]'s (DOB 8-10-2009) mother to care for [Erin] between July 10, 2006 and April 1, 2011.
> 3. The court finds that the defendant violated that trust when he sexually abused [Erin].
> 4. On March 14, 2016, the jury found beyond a reasonable doubt that the defendant was in a position of trust and violated that trust when he sexually abused [Erin].
> 5. The court finds that based on the evidence at trial and the jury's special verdict, an exceptional sentence is justified.

CP at 587-88. Finding of fact 4 contains a scrivener's error. The jury reached a verdict on March 22, 2016, not March 14, 2016.

The trial court entered one conclusion of law:

12

Pursuant to 9.94A.535(3)(n) and 9.94A.535. There are substantial and compelling reasons justifying an exceptional sentence of 30 months.

CP at 588.

During sentencing, the trial court provided the following reasons for imposing an exceptional sentence:

Now we have to remember that the purpose of our sentencing under the Sentencing Reform Act we [sic] have to have a sentence that is proportionate to the seriousness of the offense and the offender's criminal history. We have to promote respect for the law by providing punishment that is just. It must be commensurate with the punishment imposed on others committing similar offenses. . . .
And as you well know the jury did find the aggravating circumstance of this crime was committed because of a position of trust. And the legislature has set their range of 21 to 68 months because of your zero offender score, but because of the aggravators the Sentencing Reform Act the [sic] law allows the Court to go above that.

. . . I am sentencing you to outside the range an additional 30 months so that the total would be the 68 plus the 30 is a total of 98 would be your minimum. Life would be your maximum.

RP (May 10, 2016) at 25-26.

In his direct appeal, Richard Cain assigned error to the trial court's refusal to suppress evidence of bondage equipment seized from his home and its refusal to deliver the proposed limiting instruction concerning evidence that Erin feared him. *State v. Cain*, No. 34417-7-III, slip op. at 1. Nevertheless, Cain did not argue that ER 105 required the trial court to give the instruction. Accordingly, pursuant to RAP 2.5(a), this court refused to address whether the trial court erred by failing to deliver the limiting instruction under

ER 105.  This court wrote:

> The trial court should first be given the opportunity to address a
> nonconstitutional error.  If Cain had mentioned ER 105 to the trial court,
> the trial court could have assessed the need for a limiting instruction under
> the rule.

*State v. Cain*, No. 34417-7-III, slip op. at 34.

On direct review, this court also held that the trial court properly severed the search warrant and that the warrant authorized seizure of the bondage equipment evidence.  *State v. Cain*, No. 34417-7-III, slip op. at 19.  We affirmed Richard Cain's conviction.  *State v. Cain*, No. 34417-7-III, slip op. at 38.

LAW AND ANALYSIS

Standard for Review

Richard Cain is currently serving his 98-month sentence and is thus "restrained" for purposes of filing a personal restraint petition.  RAP 16.4(b).  The State concedes that Cain's petition satisfies procedural prerequisites for review.

To obtain relief in a personal restraint petition, the petitioner must show "actual and substantial prejudice resulting from alleged constitutional errors" or a "fundamental defect" resulting from a nonconstitutional errors that "inherently results in a complete miscarriage of justice."  *In re Personal Restraint of Harvey*, 3 Wn. App. 2d 204, 215, 415 P.3d 253 (2018).  Ineffective assistance of counsel constitutes constitutional error.  *In re Personal Restraint of Harvey*, 3 Wn. App. 2d at 215.  When a petitioner demonstrates

ineffective assistance of counsel, any prejudice demonstrated to satisfy the claim acts as sufficient prejudice for collateral relief. *In re Personal Restraint of Harvey*, 3 Wn. App. 2d at 215.

Richard Cain alleges his trial counsel performed ineffectively when failing to argue the unconstitutionality of his home's search because of a blank search warrant, when failing to identify ER 105 as a basis for a limiting instruction, and when failing do demand another presentence investigation report after the 2016 conviction. If he demonstrates that any of these occurrences violated an attorney's standard of care and prejudiced him, we would grant him relief.

Blank Search Warrant

*Issue 1: Whether an initial search warrant, lacking a list of property to be searched and seized, invalidated the taking of photographs of bondage instruments found inside Richard Cain's home when law enforcement officers amended the warrant to list the instruments before the officers located the instruments inside the residence?*

*Answer 1: No.*

Before assessing whether Richard Cain's trial counsel performed deficiently by failing to bring the identified motion to suppress, we analyze the likely success, or lack thereof, of any such motion. Richard Cain argues that, because the search warrant for his home was blank, objects seized pursuant to the warrant should have been suppressed for lack of particularity in the warrant. Cain contends the warrant in essence was an

15

unlimited or general warrant. Actually, law enforcement photographed the items rather than seized them. Regardless, Cain complains that the officers, when engaging in a security sweep outside and inside the residence, violated his constitutional privacy interests in his home because of the faulty warrant. Cain contends that, if his trial counsel had motioned for suppression on this basis, the trial court would have suppressed all evidence gathered from his home and he would have probably gained acquittal.

When asserting his search and seizure argument, Richard Cain ignores some critical facts. When officers found marijuana plants in the residence, they vacated the premises and proceeded to amend the search warrant. At that time, Detective Scott Runge noticed the warrant failed to list objects to be seized or photographed. Runge garnered from Judge Mitchell a corrected search warrant. Richard Cain does not claim that law enforcement officers saw instruments of bondage when they performed the security reconnaissance of his home. He does not contest that, before officers found and photographed the bondage devices, the superior court corrected the search warrant by listing the objects to be seized. He presents no facts on which this court could conclude that any unlawful entry into the home, before obtaining the amended warrant, led to the discovery of the bondage devices.

We agree with Richard Cain that general warrants can violate the proscriptions of both the federal and state constitutions. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; *State v. Nordlund*, 113 Wn. App. 171, 179-80, 53 P.3d 520 (2002). An overbroad

warrant breaches the constitution, and a warrant is overbroad if it fails to describe with particularity items for which probable cause exists to search. *State v. Keodara*, 191 Wn. App. 305, 312, 364 P.3d 777 (2015). Conformance with the particularity requirement eliminates the danger of unlimited discretion in the executing officer's decision of objects to seize. *State v. Keodara*, 191 Wn. App. at 313. These rules do not apply, however, when law enforcement officers later seize objects pursuant to a lawful warrant that specifies objects to seize.

The court will suppress evidence obtained from an unconstitutional search and seizure. *State v. Betancourth*, 190 Wn.2d 357, 364, 413 P.3d 566 (2018). The suppression extends to the evidence seized under an invalid warrant and any fruits of the seizure. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Suppression does not extend to evidence seized without exploiting any illegality. *State v. D.E.D.*, 200 Wn. App. 484, 491, 402 P.3d 851 (2017). Law enforcement did not exploit the initial protective sweep of Richard Cain's house in order to procure the search warrant authorizing the seizure or photographing of bondage instruments.

The parties dispute whether the independent source rule applies. Under the independent source doctrine, evidence tainted by unlawful police action is not subject to exclusion provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action. *State v. Betancourth*, 190 Wn.2d 357,

364-65 (2018). Since no taint infected the photographing of the bondage devices, we need not address the independent source doctrine.

Richard Cain analogizes *State v. Higgins*, 136 Wn. App. 87, 90, 147 P.3d 649 (2006). In *Higgins*, police obtained a search warrant authorizing the seizure of "'certain evidence of a crime, to-wit: 'Assault 2nd DV' RCW 9A.36.021.'" An affidavit attached to the warrant provided probable cause to collect certain evidence, but the warrant did not list the specific items to be seized. Law enforcement executed the warrant and found all the anticipated items. This court observed that law enforcement could have described the objects to be seized with particularly, given that the affidavit listed the objects. Thus, the warrant was unconstitutional for lack of particularity.

*State v. Higgins* is inapposite. Law enforcement officers, who searched Higgins' residence, conducted an illegal search based on a search warrant that failed the particularity requirement. Nevertheless, officers, during the investigation of Cain, but not the investigation of Higgins, later obtained a valid warrant.

*Issue 2: Whether trial counsel performed ineffectively when failing to seek suppression of the objects found in Richard Cain's residence on the basis of a deficient initial search warrant?*

*Answer 2: No.*

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that defense counsel's representation was deficient, and (2) that the

deficient representation prejudiced the defendant. *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016), *aff'd*, 188 Wn.2d 450, 395 P.3d 1045 (2017). Counsel performs deficiently if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *State v. Estes*, 193 Wn. App. at 488. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have differed. *State v. Estes*, 193 Wn. App. at 488.

In the context of the failure to bring a motion to suppress, counsel can only have been ineffective if it can be shown that the motion likely would have been granted. *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995); *State v. D.E.D.*, 200 Wn. App. 484, 490 (2017). In such an instance, counsel likely did not perform deficiently, and the accused cannot show prejudice. Both prongs of ineffective assistance of counsel fail illustrating the interrelatedness of the two prongs.

Because a motion to suppress would not have succeeded, Richard Cain's trial counsel did not perform ineffectively.

Limiting Instruction

*Issue 3: Whether the trial court would have given a limiting instruction about evidence of Richard Cain's violent and intimidating behavior if trial defense counsel had requested the instruction pursuant to ER 105 rather than ER 404(b)?*

*Answer 3: Yes.*

Richard Cain next contends that defense counsel provided ineffective assistance by forwarding ER 404(b), rather than ER 105, as the basis for a limiting jury instruction regarding his violent behavior in front of Erin, which evidence the State introduced to show Erin's fear of Cain. The evidence consisted of his corporal discipline of Erin and Uriah, his directions to the children to pick up rocks in a certain manner, his yelling, his threats to Erin not to disclose his conduct, his ownership and display of firearms, and his shooting of a juvenile rabbit. The State introduced the evidence to establish this fear in order to defeat Cain's attack on Erin's credibility as the result of her untimely reporting of the alleged crimes. Cain asserts that, had counsel invoked the proper evidentiary rule when requesting the limiting instruction, the trial court would have delivered the instruction. The trial, in turn, would have resulted in a different outcome. He highlights the State's emphasis of Cain's alleged abuse of Erin and Uriah as prejudicing him.

Richard Cain proposed a limiting instruction, which read:

> Certain evidence has been admitted in this trial for only a limited purpose. This evidence consists of testimony that Mr. Cain committed acts of physical and emotional abuse. That testimony may be considered by you only for the purpose of determining *the credibility of the State's witness*. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 385 (emphasis added). The trial court refused to deliver the instruction.

In this collateral attack, Cain argues that his counsel should have proposed the following instruction:

20

Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of testimony that Mr. Cain committed acts of physical and emotional abuse. That testimony may be considered by you only for the purpose of considering *Erin's delayed disclosure of the alleged sexual abuse*. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

Reply in support of personal restraint petition at 10 (emphasis added). Note that the language of the instruction proposed in this personal restraint petition differs from the instruction proposed by trial counsel. Thus, Cain impliedly argues that, not only did his trial counsel cite the wrong evidence rule, but also chose unsuitable language in his proposed limiting instruction. This additional argument correlates to the trial court's ruling denying the proposed limiting instruction. The trial court then commented that the "evidence was probative on more than just the credibility of [Erin]. It was probative on the question of why she delayed in reporting." RP at 1140.

ER 105 governs the restricted admissibility of evidence and declares:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Nevertheless, trial counsel requested a limiting instruction pursuant to ER 404(b), which rule governs the admissibility of the accused's other crimes, wrongs, or acts. The rule provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

21

> may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b).

During direct review, we analyzed whether the evidence introduced about Richard Cain's intimidating behavior constituted ER 404(b) evidence. We held that ER 404(b) lacked germaneness to the evidence because the State did not seek to introduce the evidence to show that Cain acted in conformity with the behavior portrayed in the testimony. The evidence in question did not include other acts of child molestation. The State introduced the evidence to show why Erin feared reporting Cain's molestation of her. For this reason, we ruled that ER 404(b) did not require a limiting instruction.

Richard Cain argues that, on direct appeal to this court, this court announced that trial defense counsel was deficient in failing to cite ER 105. We disagree. On appeal, this court did not address whether ER 105 entitled Cain to a limiting instruction, because he did not raise the issue to the trial court or to this court. This court wrote that "[i]f Cain had mentioned ER 105 to the trial court, the trial court could have assessed the need for a limiting instruction under the rule." *State v. Cain*, No. 34417-7-III, slip op. at 34.

Despite the lack of a ruling favorable to Richard Cain on direct review, we now conclude that the trial court should have and would have delivered a jury limiting instruction if trial counsel had cited ER 105. The evidence of Cain's behavior toward Erin was not admitted for the purpose of showing Cain to be a bad person or that he had a

22

propensity to sexually abuse young children. When evidence is admitted for a limited purpose and the party against whom it is admitted requests such an instruction, the court is obliged to give it. *State v. Goebel*, 36 Wn.2d 367, 378-79, 218 P.2d 300 (1950); *State v. Freeburg*, 105 Wn. App. 492, 501, 20 P.3d 984 (2001).

We note that trial counsel's proposed instruction read that the purpose of the evidence was only to determine the credibility of Erin. In response, the trial court commented that admitting the physical and emotional abuse evidence was proper both as to Erin's credibility and demonstrating why she delayed disclosing the abuse. In turn, Cain, in his petition, modifies his proposed limiting instruction to state the purpose of the evidence was solely for addressing why Erin delayed reporting. The State could argue that the new proposed limiting instruction still does not address all of the reasons for introducing the testimony. Nevertheless, contrary to the trial court's implied ruling, we consider the delay in reporting to be commensurate with the credibility of Erin. The purpose behind introducing evidence of late reporting is to facilitate a contention that Erin fabricated her allegations of abuse.

*Issue 4: Whether trial defense counsel performed ineffectively when asking for a limiting instruction pursuant to ER 404(b), rather than ER 105, with regard to Erin's fear of Richard Cain?*

*Answer 4: Yes.*

The State responds that any limiting instruction would have highlighted harmful

evidence of Richard Cain's physical and emotional abuse of Erin and thereby harmed rather than benefited Cain. Therefore, according to the State, requesting any jury limiting instruction under ER 105, let alone under any rule, did not constitute deficient assistance of counsel.

To establish ineffective assistance of counsel for failure to request a jury instruction, a defendant must demonstrate that he or she was entitled to the instruction, that counsel's performance was deficient in failing to request the instruction, and that failure to request the instruction prejudiced him. *State v. Johnston*, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007). We already concluded that Richard Cain was entitled to the limiting instruction. We will address prejudice later.

If trial counsel's conduct can be characterized as legitimate trial strategy or tactics, the conduct cannot serve as a basis for a claim that the defendant received ineffective assistance of counsel. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002); *State v. Dow*, 162 Wn. App. 324, 335, 253 P.3d 476 (2011). We can presume counsel did not request a limiting instruction as a tactic to avoid reemphasizing damaging evidence. *State v. Dow*, 162 Wn. App. at 335.

The State perspicaciously emphasizes the rule that we presume that counsel refrained from requesting a limiting instruction to avoid emphasizing harmful testimony. Nevertheless, this presumption miscarries when trial counsel actually requested an instruction, but failed to forward the applicable evidence rule in support of the request.

24

We should not assume that counsel deliberately declined a limiting instruction, when counsel requested a limiting instruction.

Not all defense counsel's strategies or tactics are immune from attack. *In re Personal Restraint of Caldellis*, 187 Wn.2d 127, 141, 385 P.3d 135 (2016). A criminal defendant can rebut the presumption of reasonable performance by demonstrating that no conceivable legitimate tactic explains counsel's performance. *In re Personal Restraint of Caldellis*, 187 Wn.2d at 141; *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000); *State v. Grier*, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011). We conclude that, because counsel chose to seek a limiting instruction, he did not engage in a reasonable trial tactic and he performed ineffectively when seeking the limiting instruction on the incorrect legal basis. We expect trial counsel to know of the existence of ER 105 and to be able to cite the rule to the trial court when the trial court denies a limiting instruction under ER 404(b).

In one sentence in his reply brief, Richard Cain contends his appellate counsel on direct review also performed ineffectively when failing to argue that the limiting instruction should have been given under ER 105. Nevertheless, Cain did not develop this argument. We doubt that appellate counsel acts negligently when failing to assert a

25

nonconstitutional argument that the accused failed to preserve at trial. We need not

address this additional contention since we rule that trial counsel performed ineffectively.

*Issue 5: Whether Richard Cain suffered prejudice as a result of trial defense*

*counsel's failure to ask for a limiting instruction pursuant to ER 404(b) rather than ER*

*105?*

*Answer 5: No.*

To sustain a claim of ineffective assistance of counsel, Richard Cain must show

that his counsel's performance prejudiced him. *State v. Estes*, 188 Wn.2d 450, 457-58,

395 P.3d 1045 (2017). The accused bears the burden of affirmatively establishing

prejudice. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Prejudice exists if,

but for counsel's deficient performance, the outcome of the proceedings would have been

different. *State v. Kyllo*, 166 Wn.2d at 862. A conviction by itself does not show

prejudice. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S. Ct. 838, 122 L. Ed. 2d 180

(1993). Criminal defendants are not guaranteed successful assistance of counsel. *State v.*

*Adams*, 91 Wn.2d 86, 90, 586 P.2d 1168 (1978).

Defendant emphasizes that, in closing, the State made lengthy appeals to the jury

based on Cain's alleged physical and emotional abuse of the children that the jury should

deem Cain cold, mean, controlling, intimidating, and the kind of person who would also

sexually assault a child. We agree that the State, in closing, characterized Richard Cain

as mean and controlling. The State was entitled to portray Cain as intimidating and

controlling in order to rebut inferences from Erin's late reporting.

We disagree with Richard Cain that the State suggested that Cain was the type of person who would sexually molest a child. We have reviewed the State's summation and re-reviewed the section of the closing argument about which Cain complains. The State never argued to the jury that the reported harsh discipline meant that Cain more likely than not committed the charged crimes.

Richard Cain analogizes *State v. Gresham*, 173 Wn.2d 405, 269 P.3d 207 (2012), in which the State admitted defendant Michael Gresham's prior conviction of second degree assault with a sexual motivation into evidence. The Washington Supreme Court found that the inclusion of Gresham's past misconduct was not harmless error.

We do not find *State v. Gresham* helpful. Richard Cain does not complain about introduction of any past adjudications of crime, which evidence could be used to establish a propensity to committing the charged crime. Instead, the State of Washington introduced evidence that was admissible. The only claim of ineffective assistance of counsel is the failure to seek a limiting instruction on the correct basis. Cain does not analyze whether the absence of such an instruction materially impacted the verdict.

The State of Washington provided strong evidence supporting Richard Cain's conviction. In addition to the percipient testimony of Erin, the State presented evidence establishing an opportunity to abuse Erin when Cain was alone with her while Lisa Madson worked, Uriah's and Joanne Carow's observations of Cain giving Erin special

attention, and the testimony regarding Cain's use of bondage in his sex life and on Erin and Madson. The lack of a limiting instruction does not decrease our confidence in the verdict.

Presentence Investigation Report

Richard Cain argues that the trial court erred by failing to order a presentence investigation report (PSI). Cain also argues that defense counsel provided ineffective assistance when waiving his PSI. Richard Cain contends that the trial court lacked the benefit of his previous presentence report, prepared in 2014 after his second trial, because the record does not indicate that anyone provided the trial court with this earlier report. Cain requests resentencing.

The State responds that the invited error doctrine bars Richard Cain's claim because defense counsel waived a new PSI. Also, according to the State, the sentencing court possessed the PSI from Richard Cain's initial convictions, after his second trial. Therefore, a new PSI would have been superfluous. The State also argues that the lack of a new PSI did not prejudice Cain.

*Issue 6: Whether Richard Cain invited any error in the lack of a presentence investigation report?*

*Answer 6: Yes.*

Before sentencing, the State informed the court that a presentence investigation needed to be conducted. The State's counsel then asked defense counsel if she wished to

28

be present during the presentence investigation. Defense counsel responded:

> MS. SUTTON: There's already been a PSI completed. I don't know why we would need another one at this point.

RP at 1155. The trial court thereafter did not order a presentence report. We recognize that sentencing counsel did not expressly state no report was needed. Nevertheless, an unmistakable extension of the comment is that Cain thought the sentencing court should not order a report. After the sentencing court's declination of a report, counsel never suggested one was needed.

The invited error doctrine is a strict rule that precludes a criminal defendant from seeking appellate review of an error he helped create, even when the alleged error involves constitutional rights. *State v. Carson*, 179 Wn. App. 961, 973, 320 P.3d 185 (2014), *aff'd*, 184 Wn.2d 207, 357 P.3d 1064 (2015). Richard Cain, through his agent, assisted in creating error, assuming any error existed.

*Issue 7: Whether sentencing counsel performed ineffectively when waiving Richard Cain's right to a presentence investigation report?*

*Answer 7: No.*

The doctrine of invited error does not bar review of a claim of ineffective assistance of counsel. *State v. Doogan*, 82 Wn. App.185, 188, 917 P.2d 155 (1996). Therefore, we address this assertion of Richard Cain.

RCW 9.94A.500 governs presentencing procedures, and reads, in relevant part:

29

> Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing.
> . . . .
> In addition, *the court shall, at the time of plea or conviction, order the department to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense*.

RCW 9.94A.500(1) (emphasis added). The statute mandates a presentence investigation report. *State v. Brown*, 178 Wn. App. 70, 79, 312. P.3d 1017 (2013).

In *State v. Brown*, this court remanded for resentencing because the trial court failed to order a presentence investigation report after sexual crimes convictions. We declined to apply harmless error analysis because we could not speculate to the contents of any report and its impact on sentencing.

We do not deem *State v. Brown* helpful because Richard Cain's sentencing court possessed a presentence investigation report from earlier convictions in the same prosecution. The same judge presided over both trials. Cain asserts that the superior court record does not show that the sentencing judge reviewed the 2014 report when sentencing in 2016. But we conclude that the thorough superior court judge would have reviewed the 2014 report again before sentencing in 2016. The May 2016 sentencing hearing record shows that the parties referenced an appendix that contained information overlapping to data found in the 2014 report. We know of no rule that requires the sentencing hearing record to confirm that the sentencing judge reviewed all file material before announcing a sentence.

The thorough 2014 presentence investigation report contained narration as to the official version of the crimes, the victim's concerns, Richard Cain's statement concerning the alleged offenses, the lack of any criminal history, offender scoring, community custody conditions, a risk assessment, a needs assessment, the background of Cain, conclusions with regard to sentencing, sentencing options, and recommendations. Richard Cain does not argue that an updated report in 2016 would have varied with regard to the data provided or recommendations issued.

To repeat, to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficiency prejudiced him. *State v. Johnston*, 143 Wn. App. 1, 21 (2007). We do not consider the failure to request a presentence investigation report, when an earlier report exists, to fall below the standard of care of defense counsel. We also would find no prejudice.

Exceptional Sentence Findings of Fact

*Issue 8: Whether trial defense counsel performed ineffectively when failing to object to the paucity of the trial court's insufficient findings of fact and conclusions of law in support of its imposition of an exceptional sentence?*

*Answer 8: We decline to address this issue because Richard Cain does not submit any argument regarding ineffective assistance of counsel with regard to insufficient findings of fact.*

31

In his list of grounds for relief, Richard Cain assigns error to sentencing counsel's failure to object to the trial court's purported perfunctory and insufficient findings of fact and conclusions of law in support of the exceptional sentence imposed. In turn, in the argument sections of his briefs, he analyzes the sufficiency of the findings of fact and the one conclusion of law. Nevertheless, he supplies no argument that sentencing counsel performed deficiently when failing to object to the findings of fact and conclusion of law. Nor does he provide any argument that any failure prejudiced him.

A reviewing court will not consider a contention not supported by argument. *Cyrus v. Martin*, 64 Wn.2d 810, 813, 394 P.2d 369 (1964). Therefore, we decline to address this contention.

Cumulative Error

*Issue 9: Whether cumulative ineffective assistance of counsel mandates relief for Richard Cain?*

*Answer 9: No.*

Richard Cain asserts that defense counsel's multiple errors collectively require a new trial. The cumulative error doctrine may warrant reversal, even if each error standing alone would otherwise be considered harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). The doctrine does not apply when the errors are few and have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279 (2006).

We have concluded that trial counsel committed only one error and that the error did not harm Richard Cain. Therefore, we refuse to apply the cumulative error doctrine.

CONCLUSION

Richard Cain suffered no prejudicial error leading to his convictions or his sentencing. We dismiss his personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.

33