# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58888-9-II |
| Respondent, | |
| v. | |
| TOMMY DARREN TYSON, aka TOMMY DAREN TYSON, | PUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—Tyson appeals his convictions for two counts of first degree child molestation and one count of first degree possession of depictions of minors engaged in sexually explicit conduct. Tyson argues that the trial court erred when it denied his motions to suppress evidence. First, Tyson argues that the warrantless seizure of his cell phone was unconstitutional because no exception to the warrant requirement applies. Next, Tyson argues that the trial court erred by admitting evidence obtained pursuant to the warrants to search Tyson's cell phone, laptop, and hard drive. Tyson argues that the warrants were unconstitutional because they were not supported by probable cause under the *Aguilar/Spinelli* test,[1] and the allegations in the warrant were not sufficiently particularized.

---

[1] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Gates*, 462 U.S. 213.

We affirm Tyson's convictions. We hold that the warrants to search Tyson's cell phone, laptop, and hard drive were supported by probable cause and sufficiently particular. And, regardless of whether warrantless seizure of the cell phone was permissible, the evidence obtained from the cell phone is admissible under the independent source doctrine because it was seized pursuant to a valid search warrant and we can affirm on any ground supported by the record.

FACTS

I. BACKGROUND INCIDENT

Tommy Tyson adopted multiple children, including two boys, AT, aged 10, and BT, aged 10. During a celebration of AT's adoption, Mr. Benoit, a Court Appointed Special Advocate (CASA) volunteer and mandatory reporter, saw a photo of a child pulling his shirt up and his pants down to expose his penis on Tyson's cell phone while AT was scrolling through pictures. Benoit asked AT to scroll back to the photo and AT refused. AT stated that it was a pinky finger and not a penis that was shown in the photograph. AT said he did not know who the person in the picture was. Benoit confronted Tyson who said that the boys were playing around with his phone. Benoit asked Tyson to scroll back to the photo. Tyson obliged and Benoit saw a video and the still photo of the boy on Tyson's cell phone. Tyson admitted that the photo was of AT and deleted the photo and video.

Benoit reported the photo to Child Protective Services (CPS). CPS decided to remove the children from Tyson's home. The same day, Deputy Astorga accompanied CPS when they went to the residence to remove the children. The CPS social worker told Deputy Astorga that there was a history of unfounded sexual allegations at the residence. The social worker also told Deputy Astorga about the incident where Benoit observed the photo on Tyson's cell phone, as described

above. Tyson was not home, so Deputy Astorga and another CPS worker returned to the home the next day. When they arrived, Tyson let Deputy Astorga and the CPS worker into the home and Deputy Astorga observed a cell phone sitting on a table in the living room. Deputy Astorga confirmed the cell phone was Tyson's and told Tyson that he was going to take possession of the cell phone pending a search warrant. Tyson said that he had already deleted the picture on the phone. Deputy Astorga believed that the deleted photos could be recovered. Tyson provided Deputy Astorga with the passcode to unlock the phone, but Deputy Astorga never attempted to use it. Deputy Astorga did not search the phone, but instead confiscated the phone during the time needed to secure a search warrant. Deputy Astorga took possession of the cell phone because he was concerned that evidence on the phone would be destroyed if the phone was not secured. Deputy Astorga stated that he "didn't want to leave the phone there with either it being destroyed or somehow disappeared while [he] was doing that side of the job." Verbatim Rep. of Proc. (VRP) at 17.

Days later, Janis Rawlin-Ercambrack, a friend of Tyson's, called law enforcement to report that she had received a laptop and hard drive from Tyson. Tyson told her he was giving them to her because he was afraid that they contained a photo of AT holding Tyson's penis. Tyson's brother, Travis Tyson, reported to law enforcement that he was at Tyson's house the day before the boys were placed into protective custody and that Tyson was deleting items from his computer and admitted to having "questionable porn." Clerk's Papers (CP) at 40. Travis said that Tyson gathered items into a trash bag that he did not want law enforcement to find, and that Tyson asked Travis to take his laptop and hard drive out of state, which Travis refused to do. Travis reported that Tyson later told him he had given his laptop and hard drive to Rawlin-Ercambrack.

3

One month later, a judge authorized a warrant to search Tyson's cell phone, laptop, and hard drive. The complete statements of Benoit, Rawlin-Ercambrack, and Travis were included in the affidavit of probable cause. The warrant authorized law enforcement to search the cell phone, laptop, and hard drive "for evidence *only and specifically* related to the crime of; Possession of depictions of minor engaged in sexually explicit conduct RCW 9.68A.070." *Id.* at 320 (boldface omitted). The warrant included the statutory definition of sexually explicit conduct as defined in RCW 9.68A.011. A review of Tyson's hard drive, pursuant to this warrant, uncovered hundreds of photos and videos of minor boys in various states of undress, including fully exposed genitals. One video involved four minor boys engaged in oral and anal sex and masturbation. The hard drive also contained nude photos of AT and BT. The photo seen by the CASA volunteer could not be recovered from the cell phone. During forensic interviews in late 2019 and early 2020, AT and BT reported being sexually abused by Tyson.

In October 2020, the warrant was rewritten to "comply with the court rulings in State v. McKee [sic] and to comply with changes in the law." *Id.* at 228 (boldface omitted). Like the first warrant, the second[2] warrant included the complete statements of Benoit, Rawlin-Ercambrack, and Travis in the probable cause statement. The warrant authorized law enforcement to search the cell phone, laptop, and hard drive for evidence of possession of depictions of minors engaged in sexually explicit conduct as defined in RCW 9.96A.070. The warrant also specifically identified the image of AT seen by the CASA volunteer and the photo of AT holding Tyson's penis as items to be searched for and provided a date range to search within. Pursuant to this warrant, and with

---

[2] Law enforcement applied for two search warrants in October 2020, but the first was never executed. Accordingly, we refer to the warrant that was executed as the second warrant.

the aid of updated technology, law enforcement was able to locate images of AT and BT with Tyson's penis in their mouths on the cell phone. There were also several images depicting the boys with their genitalia exposed or bent over exposing their anuses.

Based on these images, law enforcement applied for an addendum to the warrant to authorize the seizure of the additional images that appeared to depict Tyson sexually assaulting the boys. This third warrant authorized law enforcement to search Tyson's cell phone for evidence of

> Rape of a Child First Degree RCW 9A.44.073 and Possession of depictions of a minor engaged in sexually explicit conduct RCW 9.68A.070 including:
>  . . . .
> 4. Digital image(s) pertaining to apparent sexual abuse of [AT], [BT], or J.L. for the date range of 10-22-14 to 11-17-17. Law enforcement has no knowledge of when the image was actually created, modified, or deleted; and
>
> 5. Digital image(s) pertaining to nude images of [AT], [BT], or J.L. exposing their genitals or anuses for the date range of 10-22-14 to 11-17-17. Law enforcement has no knowledge of when the image was actually created, modified, or deleted; and
>
> 6. Non-criminal digital image(s) of [AT], [B.T], or J.L. for the date range of 10-22-14 to 11-17-17 for reference to compare to items #4 and #5 for identification purposes.

*Id.* at 344 (boldface omitted). Tyson did not challenge the second and third warrants below on the basis that they lacked the required particularity.

## II. PROCEDURE BELOW

The State charged Tyson with two counts of first degree child molestation and one count of first degree possession of depictions of minor engaged in sexually explicit conduct. Tyson moved to suppress all evidence obtained from the search of his cell phone, and later expanded his motion to include suppression of all evidence obtained as a result of the search warrants in this

case. With regard to the cell phone, Tyson argued that the deputy's seizure of the phone pending the issuance of a warrant to search it was unlawful, and that any evidence obtained during the subsequent search of the phone should be suppressed. With respect to the search warrants, Tyson argued that the first warrant was unlawful because it lacked sufficient particularity. Tyson further argued that the evidence obtained as a result of the subsequent warrants should be suppressed as " 'fruit of the poisonous tree' " of the unlawful first warrant. *Id.* at170. Following a hearing, the trial court denied both of Tyson's motions to suppress. The trial court ruled that the warrantless seizure of the cell phone was authorized by the exigent circumstances exception, but not by the plain view exception. The trial court further ruled that the warrants were supported by probable cause and sufficiently particular.

The case proceeded to a bench trial on stipulated facts. The trial court found Tyson guilty on all three charges and sentenced him to the high end of the sentencing range of 130 months to life.

## DISCUSSION

### I. VALIDITY OF THE SEARCH WARRANTS

Tyson argues that the three warrants authorizing the search of his cell phone, laptop, and hard drive were invalid because (1) the information provided by known, citizen informants was not sufficiently reliable to support probable cause under the *Aguilar/Spinelli* test, and (2) the warrants did not describe the parameters of the search with adequate particularity. We disagree.

A.        Probable Cause

*i. Legal Principles*

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in [their] private affairs, or [their] home invaded, without authority of law." This is a stronger protection than the Fourth Amendment of the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See State v. O'Neill*, 148 Wn.2d 564, 584, 62 P.3d 489 (2003).

"A search warrant may issue only upon a determination of probable cause." *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995) (plurality opinion). "Probable cause requires more than suspicion or conjecture, but it does not require certainty." *State v. Chenoweth*, 160 Wn.2d 454, 476, 158 P.3d 595 (2007). An affidavit in support of a warrant application must contain "facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Scherf*, 192 Wn.2d 350, 363, 429 P.3d 776 (2018). The issuing judge "is entitled to make reasonable inferences from the facts and circumstances set forth in the affidavit." *Id.*

We generally review the issuance of a warrant for abuse of discretion and afford great deference to the issuing judge. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002); *State v. Huft*, 106 Wn.2d 206, 211, 720 P.2d 838 (1986). "However, at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause." *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

Correspondingly, "the trial court's assessment of probable cause is a legal conclusion we review de novo." *Id.*

When examining the trial court's conclusion, we examine " 'whether the qualifying information as a whole amounts to probable cause.' " *State v. Emery*, 161 Wn. App. 172, 202, 253 P.3d 413 (2011) (quoting *In re Det. of Petersen*, 145 Wn.2d 789, 800, 42 P.3d 952 (2002)), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). Individual facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts in the search warrant affidavit. *State v. Garcia*, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). The application for a search warrant must be judged in the light of common sense and we resolve all doubts in favor of upholding the warrant. *Chenoweth*, 160 Wn.2d at 477.

Washington courts apply the *Aguilar/Spinelli* standard to evaluate whether an informant's tip was sufficiently reliable to support probable cause for a search warrant. *State v. Jackson*, 102 Wn.2d 432, 435, 688 P.2d 136 (1984). This standard's two prong approach requires the court to evaluate the informant's basis of knowledge and veracity. *State v. Ollivier*, 178 Wn.2d 813, 849, 312 P.3d 1 (2013). The basis of knowledge prong is satisfied by a showing that the informant had personal knowledge of the facts provided to the affiant. *Id.* at 850. The veracity prong requires that the affidavit contain information demonstrating that the informant is credible or the information reliable. *Id.* "When a citizen informant provides information, a relaxed showing of reliability suffices." *Id.* In fact, " '[c]itizen informants are deemed presumptively reliable.' " *Id.* (quoting *State v. Gaddy*, 152 Wn.2d 64, 73, 93 P.3d 872 (2004)). The defendant has the burden of overcoming the presumption of reliability. *Id.*

*ii. Application*

Here, the basis of knowledge prong is satisfied because Benoit, Rawlin-Ercambrack, and Travis each had personal knowledge of the information they provided to the affiant. Benoit told the affiant about the photo he observed and the conversation he had with Tyson. Rawlin-Ercambrack and Travis each told the affiant about conversations they had personally had with Tyson and the conduct they directly observed.

Tyson contends that there was an insufficient basis of knowledge because the statement of each informant, alone, was insufficient to support a finding of probable cause. But the basis of knowledge prong requires that the *affidavit* contain "sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place to be searched." *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). And individual facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts in the search warrant affidavit. *Garcia*, 63 Wn. App. at 875. Here, the informants reported that Tyson asked Rawlin-Ercambrack and Travis to hide his laptop and hard drive for him, admitting that they contained "questionable" porn and a photo of AT holding Tyson's penis. CP at 312. Benoit saw a photo of AT exposing his penis on Tyson's cell phone. Given that Tyson also had a photo of AT holding Tyson's penis, it is reasonable to infer that Tyson possessed this photo for his sexual gratification. Taken together, the information provided by the informants is sufficient to convince a reasonable person that Tyson possessed depictions of minors engaged in sexually explicit conduct and that evidence of that crime could be found on the laptop, cell phone, and hard drive.

Moreover, as named, citizen informants, Benoit, Rawlin-Ercambrack, and Travis are presumptively reliable. Tyson has alleged no facts indicating that information provided by these informants was incorrect or that these informants were otherwise unreliable. In fact, the information provided by the informants was consistent across accounts. Accordingly, these statements by known citizen informants about their personal observations relating to the crime are sufficiently reliable to support a finding of probable cause.

B.      Particularity

        *i. Legal Principles*

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution require that a search warrant describe with particularity the place to be searched and the persons or things to be seized. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). The particularity requirement prevents general and overbroad searches. *Id.* We review de novo whether a search warrant contains a sufficiently particularized description of the items to be searched and seized. *Id.*

A search warrant's description of the place to be searched and property to be seized is sufficiently particular if "it is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* at 547. The warrant must be specific enough to enable the searcher to reasonably identify the things which are authorized to be seized. *Id.* at 546. The required degree of specificity varies according to the circumstances and the types of items involved. *Id.* A greater degree of particularity is required where the warrant involves materials potentially protected by the First Amendment. *Id.* However, a general description of the things to be seized may be sufficient if probable cause is shown and "a more specific description is impossible" with the

information known to law enforcement at the time the warrant is issued. *Id.* Search warrants must

be "tested and interpreted in a commonsense, practical manner, rather than in a hypertechnical

sense." *Id.* at 549.

    *ii. Application*

    Tyson argues that none of the three warrants from which evidence was seized satisfy the

particularity requirement. The State contends that the first warrant was sufficiently particular and

that we should not consider Tyson's argument as to the second and third warrants because Tyson

did not preserve the issue for appeal. The State further argues that, even if we consider Tyson's

argument as to the second and third warrants, those warrants are sufficiently particular. We hold

that the first warrant was sufficiently particular and that Tyson waived his arguments as to the

second and third warrants.

    First, Tyson argues that the first warrant did not satisfy the particularity requirement

because it did not comply with a perceived requirement in *State v. Keodara*, 191 Wn. App. 305,

364 P.3d 777 (2015), that a warrant to search electronic devices specify which files and

applications are to be searched in the drives, disks, and memory storage devices.[3] But *Keodara*

imposes no such requirement. Under *Keodara*, a warrant to search electronic devices is sufficiently

particular if it distinguishes between items the State has probable cause to seize and those it does

not. *Keodara*, 191 Wn. App. at 314. Here, the first warrant limited the search to the cell phone,

---

[3] Tyson also argues that the State conceded that the first search warrant was unconstitutional when, in its application for the second warrant, the affiant stated " 'Due to court rulings in State v. McKee [sic], (after the original complaint and warrant were reviewed and granted) affiant was asked to revise the complaint and warrant to comply with new court rulings.' " Br. of Appellant at 39 (boldface omitted) (quoting CP at 228). Even if this was a concession, a premise with which we do not agree, an erroneous concession is not binding on the court. *State v. Knighten*, 109 Wn.2d 896, 902, 748 P.2d 1118 (1988).

laptop, and hard drive which, based on the supporting affidavit, law enforcement had probable cause to believe contained evidence of possession of depictions of a minor engaged in sexually explicit conduct. And the search was limited to "evidence *only and specifically* related to the crime of; Possession of depictions of minor engaged in sexually explicit conduct RCW 9.68A.070." CP at 311 (boldface omitted). The warrant also included the statutory definition of sexually explicit conduct, which provides a detailed list of the types of conduct the statute prohibits. These limitations sufficiently differentiate materials protected by the First Amendment, like adult pornography, from the items authorized to be seized. The warrant could not be more specific because the officers did not know where on these devices such evidence might be stored. Because the warrant limited the search to data for which there was probable cause and was as specific as possible with the information known to law enforcement at the time, the warrant met the particularity requirement.

Next, Tyson argues that the second and third warrants also lacked sufficient particularity because they did not specify the files and time frames from which officers could search. As the State notes, Tyson did not raise this issue at the CrR 3.6 hearing in the trial court and thereby waived the argument on appeal. RAP 2.5(a); *State v. Lee*, 162 Wn. App. 852, 857, 259 P.3d 294 (2011). Accordingly, we decline to address it.[4]

---

[4] Tyson did not address RAP 2.5(a) in his opening brief or acknowledge that he did not challenge the second and third warrants below on the ground of particularity. In his reply brief, he responds to the State's request that we not consider his particularity argument as to the second and third warrants for the first time on appeal by saying "RAP 2.5(a) permits a party to raise an issue for the first time on appeal if it is a manifest error affecting a constitutional right." Reply Br. of Appellant at 30. He then states, in conclusory fashion, "Here, particularity of the [first] search warrant was raised below and this Court should consider the same particularity argument for the subsequent warrants all written to find the same evidence." *Id.* This argument is insufficient to warrant our review. *See Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

## II. WARRANTLESS SEIZURE OF THE CELL PHONE

Tyson argues that warrantless seizure of his cell phone was unconstitutional because none of the exceptions to the warrant requirement apply. The State contends that an officer may seize a cell phone without a warrant to prevent the destruction of evidence during the time needed to secure a search warrant. We hold that regardless of whether the warrantless seizure of Tyson's cell phone was authorized, evidence obtained from the cell phone is admissible under the independent source doctrine because, as discussed above, it was seized pursuant to a valid warrant.

A.      Legal Principles

When reviewing denial of a CrR 3.6 motion to suppress evidence, we determine whether challenged findings of fact are supported by substantial evidence. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Tyson does not challenge any findings of fact, therefore they are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). "[T]he ultimate determination of whether those facts constitute a violation of the constitution is one of law and is reviewed de novo." *State v. Budd*, 186 Wn. App. 184, 196, 347 P.3d 49 (2015), *aff'd*, 185 Wn.2d 566, 374 P.3d 137 (2016).

In general, the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit searches and seizures absent a warrant or an exception to the warrant requirement. *State v. Ladson*, 138 Wn.2d 343, 348-50, 979 P.2d 833 (1999). "When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed." *Id.* at 359. However, the independent source doctrine provides that evidence that is tainted by unlawful governmental actions is not subject to suppression if it is obtained pursuant to a valid warrant or other lawful independent means. *State*

*v. Gaines*, 154 Wn.2d 711, 718, 116 P.3d 993 (2005). If the unlawful government action did not contribute to the magistrate's decision to issue the warrant or the State's decision to seek the warrant, then the evidence is admissible through the lawful warrant. *State v. Betancourth*, 190 Wn.2d 357, 365, 413 P.3d 566 (2018). Additionally, we may affirm on any ground supported by the record. *State v. Smith*, 165 Wn. App. 296, 308, 266 P.3d 250 (2011), *aff'd*, 177 Wn.2d 533, 303 P.3d 1047 (2013).

B.      Application

Tyson contends that his cell phone was seized unconstitutionally and, therefore, his conviction must be reversed because all evidence obtained from the cell phone must be suppressed. This is so, he contends, because exigent circumstances did not support the seizure of the phone and Deputy Astorga could have obtained a warrant immediately after the picture on his phone was discovered by the CASA volunteer. But even assuming, without deciding, that the warrantless seizure of Tyson's cell phone during the time required to secure a search warrant was unreasonable, the evidence obtained from the cell phone is admissible under the independent source doctrine. As we conclude above, the photos and evidence on the cell phone were seized pursuant to valid search warrants. Because there had been no search of the phone prior to the warrant application, no information from the phone was used in any of the search warrant affidavits. Therefore, neither the deputy's decision to seek the warrants nor magistrate's decision to issue the warrants were influenced by the warrantless seizure of the cell phone. The trial court did not err in denying Tyson's motion to suppress.

No. 58888-9-II

## CONCLUSION

We hold that the warrants to search Tyson's cell phone, laptop, and hard drive were supported by probable cause and sufficiently particular. And because the warrants to search the cell phone were valid, the trial court did not err by denying Tyson's motion to suppress. We affirm Tyson's convictions.

CRUSER, C.J.

We concur:

VELJACIC, J.

CHE, J.

15